IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:14CR00027 |
| v. | ) **OPINION AND ORDER** |
| JUAN ELIAS LARA, | ) By: James P. Jones |
| | ) United States District Judge |
| Defendant. | ) |

*Kevin L. Jayne, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Dan Bieger, Dan Bieger, PLC, Bristol, Tennessee, for Defendant.*

Defendant Juan Elias Lara has pleaded guilty to violating the Sex Offender Registration and Notification Act ("SORNA"). He now moves to preclude consideration at his sentencing of his prior admissions of criminal conduct. He made those confessions during a state court mandated sex offender treatment program ("SOTP"). For the reasons that follow, I conclude that the defendant's motion must be denied. Even assuming the psychotherapist-patient privilege applies at sentencing, I find that Lara has waived the privilege. Moreover, I find that consideration of his statements would not violate his Fifth Amendment self-incrimination rights.

I.

The facts, as developed at an evidentiary hearing and through exhibits, are essentially uncontested. The court heard testimony from two witnesses at the hearing — Rudy Flora, the defendant's SOTP therapist, and Brian Hall, a state probation employee. Lara did not testify.

In December 2009, the defendant Lara, a 37-year-old with a GED certificate, completed a three-year Virginia prison sentence for aggravated sexual battery, and began a 20-year term of supervision. As part of his conditions of supervision, the state court ordered that the defendant follow certain "special instructions" for sex offenders, which included that he "[a]ttend and successfully complete" a SOTP approved by his probation officer, and submit to polygraph testing. (Gov't's Resp. Opp'n Mot. in Lim., Ex. A, ECF No. 51-1.) In addition, the instructions specified that Lara allow the "sex offender treatment provider unrestricted communication with the probation and parole department, to include [his] supervising officer, regarding [his] attendance, level of participation, and any other information deemed necessary to protect the community from [his] sexually abusive behavior." (*Id.*)

In early 2010, the defendant was referred by the probation office to a SOTP administered by a Virginia Department of Corrections ("VDOC") contractor, Flora Counseling Services. At the hearing, Rudy Flora, a certified sex offender

treatment provider and the owner of the counseling firm, testified as to the intake process used for Lara's SOTP. First, in order to be admitted to the SOTP, Lara was required to sign a form (the "Waiver Form") which included the following terms:

> ACKNOWLEDGMENT OF CONFIDENTIALITY WAIVER
>
> I hereby allow the therapist or group leaders to report to the appropriate authorities, police, probation and parole office, or any member of law enforcement any future occurrence or potential occurrence of an alleged criminal offense, or sexual offense on my part, regardless of how the knowledge is learned or revealed.
>
> . . . .
>
> I have been informed and acknowledge that whatever I tell a therapist or group leader . . . is not privileged or private and hereby waive any and all such rights of confidentiality which may exist by statute or rule of law. There is no confidentiality regarding criminal matters that I disclose to my therapist or group leader associated with Flora Counseling Services.
>
> By signing this form you have agreed that if you communicate . . . any reported criminal or sexual behavior alleged, or potential threats of harm toward others, confidentiality will be waived to assure the protection of others.
>
> It is understood, however, that the therapist/group leader will attempt to respect my rights to privacy and confidentiality.

(*Id.*, Ex. B, EFC No. 51-2.) In addition, Lara signed a separate form (the "Consent Form") consenting to release of his information to VDOC, for use in "effectively provid[ing] and/or coordinat[ing] services, benefits, and treatment planning." (*Id.*, at Ex. C, ECF No. 51-3.) At the hearing, Flora stated that the failure to sign the

-3-

Waiver Form would bar a defendant's admission to the SOTP, and could constitute grounds for a probation revocation proceeding. Further, Flora testified that he explained the meaning of the forms to Lara, including that his statements made during therapy would be disclosed to VDOC. According to Flora, Lara signed these forms voluntarily and without any objection.

Next, Lara completed an intake interview with Flora, during which Lara disclosed some details of his sexual and criminal history. Bryan Hall testified that he also sat in on this meeting, even though he was not a probation officer or specifically involved in Lara's SOTP. Rather, Hall's job duties as to Lara were simply to drive him to probation-related appointments, since Lara had no other means of transportation. At the time, Hall was studying for a bachelor's degree in counseling and was thus allowed by Flora to sit in on the meeting in order to observe. Lara did not object to Hall's presence at the interview.

Following the intake meeting, Flora referred Lara to Jeffrey A. McCorkindale, another VDOC contractor, for the purpose of undergoing a polygraph examination. Although Hall drove Lara to the appointment, neither Flora nor Hall was present during the polygraph examination. As part of the polygraph testing, Lara filled out a form for McCorkindale regarding his sexual history. On the form Lara described over 70 sexual contacts going back over more than 25 years, including 44 with female minors — four of whom Lara claimed to

have raped. (*Id.*, Ex. G, ECF No. 51-7.) The list included details of the sexual contacts, including dates, names, number and types of sexual acts performed. In addition, during the polygraph examination Lara claimed to have murdered two men — one through a "hit" he ordered on another inmate while imprisoned, and one that he shot and killed on the street in Florida about 1997. (*Id.*, Ex. G, ECF No. 51-7.) The polygraph examiner opined that the test indicated that Lara was truthful in his admissions. A summary of Lara's statements was provided to both Flora and VDOC.

Hall testified that McCorkindale had told him of Lara's incriminating statements. While transporting Lara and in the course of casual conversation about unrelated topics, Hall inquired as to Lara's statements. According to Hall, Lara acknowledged that he made these statements and claimed that they were truthful, without providing any further details.

Following the polygraph testing, Lara attended and completed the SOTP. Flora testified that Lara was highly engaged, had good attendance, and successfully completed the program's requirements. Had Lara not successfully completed the program, Flora testified, his failure may have been grounds for a probation revocation proceeding.

II.

The defendant has pleaded guilty to knowingly failing to register and update his registration as required by SORNA. He seeks to exclude evidence of his incriminating oral and written statements made to the polygraph examiner from the court's consideration at sentencing, on the ground that these statements are subject to the psychotherapist-patient privilege.

Federal Rule of Evidence 501 provides that "[t]he common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." In *Jaffee v. Redmond*, the Supreme Court held that "communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501." 518 U.S. 1, 15 (1996). However, "[l]ike all testimonial or evidentiary privileges, the psychotherapist-patient privilege must be strictly construed." *United States v. Bolander*, 722 F.3d 199, 222 (4th Cir. 2013).

As an initial matter, there is some question as to whether the psychotherapist-patient privilege applies at the sentencing stage. On the one hand, Federal Rule of Evidence 1101(c) provides that "[t]he rules on privilege apply to all stages of a case or proceeding." Further, although Rule 1101(d) states that the

rules of evidence do not apply to sentencing proceedings, it makes a specific exception for the rule of privilege. On the other hand, the Fourth Circuit has stated, albeit in an unpublished opinion, that "[a]lthough federal law generally recognizes the privilege protecting confidential communications between a psychotherapist and patient, the presentence investigation is not limited by traditional rules of evidence." *United States v. Wiggins*, No. 14-4729, 2015 WL 4496826, at *2 (4th Cir. July 24, 2015) (unpublished) (internal quotation marks and citations omitted). "Specifically, the Guidelines provide that, in making its sentencing decision, the district court 'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.'" *Id.* (quoting U.S. Sentencing Guidelines Manual § 6A1.3(a), p.s. (2004)). Thus, the court of appeals upheld the admission at sentencing of a defendant's statements made during a SOTP, while noting that any error would have been harmless because the court did not rely on those statements at sentencing. *Id.*

Even assuming that the psychotherapist-patient privilege applies at sentencing, I find Lara has waived the privilege in this case. "A patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it." *Bolander*, 722 F.3d at 223. "A waiver may occur when the substance of

-7-

therapy sessions is disclosed to unrelated third parties or when the privilege is not properly asserted during testimony." *Id.* (internal quotation marks and citation omitted). Further, the person invoking the privilege has the burden of demonstrating its applicability, including the absence of any waiver of it. *Id.*

Lara signed the Waiver Form prior to entering the SOTP[1] which unequivocally stated that any information he provided during treatment would not be "privileged or private," and that he would "waive any and all such rights of confidentiality which may exist by statute or rule of law." Further, the Waiver Form stated that there would be "no confidentiality regarding criminal matters that [he] disclose[d] to [his] therapist or group leader associated with Flora Counseling Services," and expressly contemplated that admissions of criminality would be disclosed "to assure the protection of others."[2] The meaning of these waiver provisions was clear, and there was no evidence presented that Lara's decision to

---

[1] Although the Waiver Form provides reason to find a waiver of privilege in this case, the Consent Form signed by Lara does not. By its terms, the Consent Form solely authorized disclosure of Lara's statements to VDOC for the purpose of effectively providing services, benefits, and treatment planning — not for use in future criminal proceedings.

[2] Certain provisions of the Waiver Form could be seen as ambiguous, but as a whole, it is clear. It is unclear from certain provisions of the Waiver Form whether SOTP staff could only report "any future occurrence or potential occurrence" of an alleged criminal offense, and whether it would only be used "to assure the protection of others" or for other purposes. Other provisions of the Waiver Form, however, including that any statements made during therapy would not be "privileged or private" and that "[t]here is no confidentiality regarding criminal matters," provide a broad, unequivocal confidentiality waiver of all matters disclosed during therapy.

sign the Waiver Form was not knowing and voluntary or that he had any objection to signing the waiver. *Cf. United States v. Wiggins*, No. 6:13-00183, 2014 WL 792172 at *1 (S.D. W.Va. Feb. 25, 2014) (finding that SOTP confidentiality waiver stating that staff may share information about the defendant's case with other agencies was insufficient to waive the privilege, as it was unclear which agencies could use his statements and for what purpose). Thus, Lara "knowingly and voluntarily relinquish[ed]" any privilege he might have had in statements made during the SOTP by signing the waiver. *Bolander*, 722 F.3d at 223.

Even if the Waiver Form had been insufficient, Lara further waived his privilege by willingly disclosing the details of his statements to a third party not involved in his treatment — namely, Brian Hall. *See Bolander*, 722 F.3d at 223 ("A waiver may occur when the substance of therapy sessions is disclosed to unrelated third parties."). Lara permitted Hall to sit in on his initial intake interview with Flora, during which Lara disclosed certain details of his sexual and criminal history. Moreover, despite the fact that Hall was not present during the polygraph examination, Lara later confirmed to Hall the incriminating statements he had made, and acknowledged that he had been truthful in making those statements. Although it is true that Hall initiated the conversation by inquiring about the statements, there is no evidence that the conversation was coercive in any way, or that Lara felt compelled to answer Hall's questions. Lara was not in

-9-

Case 1:14-cr-00027-JPJ-PMS   Document 70   Filed 08/28/15   Page 9 of 13   Pageid#: 342

custody at the time he discussed his statements with Hall, and he was not being questioned with the aim of prosecuting him for the statements. *See United States v. Nichols*, 438 F.3d 437, 443-44 (4th Cir. 2006) (noting that statements obtained as a result of "conversational" questioning were voluntary, absent "coercive tactics" by police). Rather, the exchange occurred as part of a casual conversation on a variety of topics that took place while Hall was driving Lara. *See id.* At no time did Lara express any objection to answering Hall's questions.

"[A]s the Supreme Court in *Jaffee* made clear, the [psychotherapist-patient] privilege only extends to those psychotherapists who are being consulted for diagnosis and treatment, not under other circumstances." *Bolander*, 722 F.3d at 223. Hall was not a psychotherapist, and Lara was not consulting with him for diagnosis or treatment purposes. *See id.* (holding that privilege was waived where defendant disclosed treatment records to defense expert for the purpose of evaluating his mental status). Therefore, Hall was unquestionably an "unrelated third part[y]," *id.*, and Lara waived any privilege he might have had in disclosing to Hall the statements he made during the polygraph examination.[3]

In sum, the evidence shows that Lara was competent, experienced and not subjected to any physical or psychological pressure, and that he voluntarily waived

---

[3] While the polygraph examiner was not a therapist, I will assume that he was acting as an extension of therapist Flora, as a necessary part of the SOTP.

any psychotherapist-patient privilege as to his statements made during the SOTP. Therefore, his statements are admissible for sentencing purposes.

III.

Aside from the Rule 501 privilege question, I requested the parties to brief the additional issue of whether the admission of the defendant's statements at sentencing might violate his Fifth Amendment privilege against self-incrimination. Upon receipt of the parties' submissions, however, I am persuaded that admission of the statements would not violate the defendant's Fifth Amendment rights. Although the Fifth Amendment privilege protects the defendant against being compelled to provide incriminating information that may be used against him in a future prosecution, its provisions are generally not self-executing and the defendant must claim the privilege to invoke it. *United States v. Ramos*, 685 F.3d 120, 126-27 (2d Cir. 2012) (citing *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)). It is undisputed that Lara did not invoke his Fifth Amendment privilege in connection with his state probation and the requirement that he participate in the SOTP.

Lara's statements were clearly voluntary in the normal sense. Nevertheless, there are the "so-called 'penalty' cases, where the government compels an individual 'to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing . . . self-incrimination.'" *Ramos*, 685 F.3d at 127 (quoting *Murphy*, 465 U.S. at 434)). Lara's situation is not a

penalty case, however, because he was not informed "that invocation of the privilege would lead to revocation" of probation, in which case he would be deemed to have been compelled to speak. *Ramos,* 685 F.3d at 127. Rather, Lara's terms of probation required him to be truthful with his probation officer and to successfully complete sex offender therapy, terms that have been upheld as not constituting compelled self-incrimination. *Id.* (citing *Murphy*, 465 U.S. at 424); *United States v. Lee*, 315 F.3d 206, 212-13 (3d Cir. 2003) (same); *but see United States v. Bahr*, 730 F.3d 963, 966 (9th Cir. 2013) (holding that admission of statements at sentencing obtained through court-ordered SOTP that required disclosure of past criminal sexual conduct violated self-incrimination privilege).

Moreover, a sentencing is required to be inclusive in the type of evidence received. 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *see, e.g., Nichols*, 438 F.3d at 439-44 (allowing admission at sentencing of voluntary confession made in violation of the required *Miranda* warnings).

I find that Lara's Fifth Amendment rights would not be violated by the consideration of the statements in question at sentencing.

IV.

Whether the information in question will affect Lara's sentence is yet to be determined. Absent the traditional rules of evidence, reliability is the touchstone in sentencing proceedings. It is possible to have doubts as to the veracity of the defendant's statements, in light of their implausible level of detail, and his likely motive to impress his treatment providers with his forthrightness. Further, there is no evidence that any of the defendant's confessions to serious crimes were prosecuted or even investigated. Nevertheless, at this point at least I do not preclude my consideration of them in fixing an appropriate sentence.

V.

For these reasons, it is **ORDERED** that the Motion in Limine (ECF No. 35) is DENIED.

ENTER: August 28, 2015

/s/ James P. Jones
United States District Judge