# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 1:14CR00027 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **JUAN ELIAS LARA,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Kevin L. Jayne, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Dan Bieger, Dan Bieger, PLC, Bristol, Tennessee, for Defendant.*

In this Opinion I set forth the reasons for the defendant's sentence.

## I.

The defendant, Juan Elias Lara, pleaded guilty to violating the Sex Offender Registration and Notification Act ("SORNA"). At a sentencing hearing held on September 17, 2015, I determined, without objection, that the defendant had a Total Offense Level under the advisory Sentencing Guidelines of 13, a Criminal History Category of V, and a resulting imprisonment range of 30 to 37 months. The United States requested a upward departure or variance to the statutory maximum of 10 years imprisonment and presented extensive evidence, both testimonial and documentary, in support of its motion. The defendant responded with evidence and counsel orally argued the issues. Thereafter, I adjourned the

hearing in order to more carefully review the evidence before determining the appropriate sentence.

The following facts are based upon the evidence presented at the earlier sentencing hearing, as well as an earlier hearing conducted on the defendant's Motion in Limine seeking to preclude consideration of his prior confessions of extensive and serious uncharged criminal conduct, which motion I denied. *United States v. Lara*, No. 1:14CR00027, 2015 WL 5097182, at *2 (W.D. Va. Aug. 28, 2015).

In December 2009, the defendant, a 37-year-old with a GED certificate, completed a three-year Virginia prison sentence for aggravated sexual battery, and began a 20-year term of supervision. Accordingly, the defendant was required to register as a sex offender with the Virginia Sex Offender and Crimes against Minors Registry. The defendant subsequently registered at an address located in Galax, Virginia.

As required by the terms of his supervision, the defendant completed a court mandated sex offender treatment program ("SOTP"). The program required submission to a polygraph test shortly after his release from prison.

On March 13, 2014, Virginia State Police Trooper Darren Suthers determined that the defendant was no longer living at his registered address, and

had not updated that registration. On March 20, 2014, Trooper Suthers obtained an arrest warrant, charging Lara with knowingly failing to register.

On September 12, 2014, Lara was arrested by police in Lake Jackson, Texas. Lara was found to be in possession of marijuana and admitted to being under the influence of marijuana. Lara initially provided the arresting officers with false identification information, but later admitted his true identity. Police officers conducted a check with the Texas Sex Offender Registry and confirmed that Lara had not registered with that agency.

On May 4, 2015, the defendant pleaded guilty in this court to failing to register as a sex offender, in violation of 18 U.S.C. § 2250.

The government has moved for a sentence above the guideline range, either as a departure authorized by the guidelines or as a variance.[1] It seeks a sentence of ten years, the maximum permissible by statute. The defendant requests a sentence within the guideline range.

---

[1] While "[t]he Guidelines provide a framework or starting point . . . for the judge's exercise of discretion" in sentencing, *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011), I may reject a sentence within that range as a variance "because a sentence within the Guidelines fails to reflect the other [18 U.S.C.] § 3553(a) factors or 'because the case warrants a different sentence regardless.'" *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). It is not necessary for the court to consider a guidelines-authorized departure before imposing a sentence outside of the guideline system as a variance, because "the practical effects of applying either a departure or a variance are the same." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011).

The government's request for a variance is premised primarily on the defendant's uncharged criminal history, as well as conduct he engaged in while on supervision following his release from his Virginia prison sentence. To be sure, the defendant has a documented criminal conviction history, which began in 1997, when the defendant was 24 years old. Since that time, the defendant has been convicted of drug possession, criminal mischief, giving false identification to law enforcement, driving without a license, and aggravated sexual battery. The sexual offense involved intercourse with a young woman with Down's Syndrome, who became pregnant as a result.

In addition, the defendant admitted, during his SOTP, to have committed a number of crimes for which he had not been charged or convicted. As part of the SOTP, the defendant was first required to complete an intake interview with therapist Rudy Flora. Brian Hall, a state probation employee, was also present during this interview. During the interview, Lara disclosed some details of his sexual and criminal history. Flora subsequently referred Lara to a polygraph examiner, Jeffrey A. McCorkindale. In preparation for the examination, McCorkindale required Lara to fill out a written form that detailed his sexual history. On the form, Lara described over 70 sexual contacts, including 44 with female minors. Lara stated that he had raped four of these under-aged females. In addition, Lara claimed during the polygraph examination that he had previously

murdered two men — one through a "hit" he had ordered on another inmate while imprisoned, and the other that he had shot and killed on the street in Florida around 1997. Following the examination, the polygraph examiner opined that Lara had been truthful when giving these statements.

While transporting Lara and in the course of casual conversation about unrelated topics, probation employee Hall inquired as to Lara's statements. According to Hall, Lara acknowledged that had he made these statements and claimed that they were truthful, without providing any further details.

The government presented evidence during the sentencing hearing that connected Lara to the murder of Antonio Morales, who had been found dead of a gunshot wound in Florida on August 3, 1996. Specifically, the government presented the testimony of Sam Bunch, a detective for the Sheriff's Office in Polk County, Florida. Detective Bunch testified that the defendant was a suspect in Morales' death, but that he had not yet been charged. The defendant became a suspect in Morales' murder when an anonymous informant told the Sheriff's Office that the defendant had admitted to murdering Morales. The informant further reported that Lara had been pulled over for speeding shortly after the murder, and that Lara had thrown the murder weapon out of his vehicle's window prior to stopping so that it would not be discovered. The Sheriff's Office independently confirmed that Lara had been pulled over for speeding around this

time. However, the officers who conducted that stop did not see Lara throw a weapon out of his car, and a search of the area did not reveal any weapon.

The government also presented evidence showing that, while on supervision, the defendant had engaged in inappropriate online conversations with a sixteen-year-old girl. The government asserted that the defendant engaged in these conversations using multiple Facebook accounts that he created to keep his online identity relatively anonymous. The government presented numerous documents through the testimony of Deputy United States Marshall Byron Schiesz indicating that the Facebook accounts were managed by the defendant. These documents include pictures from the Facebook accounts, lists of "friends" associated with the accounts, and specific online messages that tend to suggest the defendant was the creator of those accounts.

The minor who engaged in these conversations also testified during the defendant's sentencing hearing. She testified that while she had never met the defendant in person, her online conversations with him were of an amorous nature.

The defendant's conversations with this minor also included threats regarding the defendant's probation officer, and statements from the defendant that he was intentionally evading federal authorities.

Lara claimed during his SOTP to be a member of the Mexican Mafia, a violent prison gang. The defendant presented the testimony of Jeremy Slack, a

-6-

Case 1:14-cr-00027-JPJ-PMS   Document 85   Filed 12/08/15   Page 6 of 11   Pageid#: 853

college professor who has studied prison gangs, who opined that the Mexican Mafia would no longer allow the defendant to be a member because of his prior conviction for sexual battery.

After consideration of the evidence and the arguments made by the parties, I find that a sentence above the advisory guideline range in this case is appropriate as a variance.

II.

While there is no objection to the calculation of the advisory guideline range, the defendant objects to the government's request for an upward variance from that range because of his prior uncharged criminal conduct. The relevant statutes make clear that prior criminal conduct should be considered. One such statute provides that

> [n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661.

Another requires the court in fixing a sentence to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual

defendant.'" *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

The Sentencing Guidelines themselves echo this principle, providing that the court may consider "any information" in fixing a sentence, even evidence that is not necessary in determining the guideline range. U.S. Sentencing Guidelines Manual § 1B1.4 cmt. (2014). Moreover, it is settled that this duty to take into account wide-ranging information about the defendant permits the court to consider evidence that is not constrained by the normal rules applicable to criminal trials. *See United States v. Powell*, 650 F.3d 388, 391-92 (4th Cir. 2011).

In addition, the court may consider uncharged and even acquitted conduct in determining a sentence, "as long as that conduct is proven by a preponderance of the evidence." *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009).

III.

I find that the government has shown, by a preponderance of the evidence that the defendant engaged in serious criminal conduct while on his recent state supervision. The government reliably established that the defendant had inappropriate social media conversations with a minor female. Given the nature of the defendant's sexual battery conviction, his online conversations with the female minor are especially troubling. The online conversations also show that the defendant made threats and that he was deliberately avoiding authorities.

Of course, the most egregious conduct levied against the defendant by the government comes in the form of statements the defendant made during his SOTP. These statements suggest the defendant previously had sex with numerous female minors, raped four females, ordered a hit on a fellow inmate while in prison, murdered a man in Florida, and was a member of the Mexican Mafia. While there is certainly enough evidence to establish that the defendant in fact made these confessions during his SOTP, the greater question is whether the statements sufficiently establish the supposed conduct.

The defendant admitted to all of these crimes during his SOTP polygraph examination, and the examiner interpreting that polygraph determined that the statements were true. Lara further confirmed that the statements were true, and that he had committed the crimes, during an informal conversation with probation employee Hall. The government also introduced evidence, through Detective Bunch, that showed that Lara was suspected of killing Morales, whose murder was strikingly similar to the Florida murder Lara described during his SOTP. Of course, Lara's description of the Florida murder is not synonymous with all of the details surrounding Morales' death, and the evidence introduced via Detective Bunch derives mostly from the tip of a single informant who accused Lara of admitting to the murder.

Lara's confessions could have been fabrications that were motivated by a desire to impress his treatment providers with his forthrightness. Nonetheless, I cannot ignore that Lara voluntarily confessed to committing these crimes, and that he did so more than once. These confessions are made even more believable by the fact that Lara is being investigated for committing a murder that is similar to one that he confessed to. Therefore, I find that the government has shown that it is more likely than not that Lara committed the uncharged crimes that he confessed to during his SOTP.

Accordingly, a close examination of the defendant's history and characteristics, as required by statute, convinces me that a sentence above the advisory guideline range is appropriate. Deterrence and the protection of the public justify a lengthy prison sentence in the defendant's case. *See United States v. Rivera-Santana*, 668 F.3d 95, 106 (4th Cir. 2012) (finding 240-month sentence for illegal reentry into the United States not unreasonable even though guideline range was 51 to 71 months, based on defendant's serious past criminal history including sexual assault of a child); *see also United States v. Wilson*, 452 F. App'x 418, 420-21 (4th Cir. 2011) (unpublished) (upholding 240-month sentence where guideline range was 63 to 78 months, based upon past criminal conduct); *United States v. Schmidt*, 434 F. App'x 193, 194 (4th Cir. 2011) (unpublished) (finding

420-month sentence reasonable where guideline range was 168 to 210 months, based upon prior unprosecuted and repetitive criminal conduct).

For these reasons, the defendant will be sentenced as a variance above the advisory guideline range to a term of 120 months imprisonment, the statutory maximum.

DATED: December 8, 2015

/s/ James P. Jones
United States District Judge

-11-

Case 1:14-cr-00027-JPJ-PMS   Document 85   Filed 12/08/15   Page 11 of 11   Pageid#: 858